IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| LESTER LORENZO RUMMANS, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | |
| | § | Case No. 3:22-cv-02046-M-BT |
| HSBC BANK USA, NATIONAL | § | |
| ASSOCIATION AS TRUSTEE FOR | § | |
| MASTR REPERFORMING LOAN | § | |
| TRUST 2005-2, SPECIALIZED | § | |
| LOAN SERVICING, LLC, and | § | |
| NORTHSKY LLC, | § | |
| | § | |
| Defendants. | § | |

**FINDINGS, CONCLUSIONS, AND RECOMMENDATION
OF THE UNITED STATES MAGISTRATE JUDGE**

Before the Court in this removed civil action is a Motion for Summary Judgment (ECF No. 20) by Defendants HSBC Bank USA, National Association, as Trustee for MASTR Reperforming Loan Trust 2005-2 (HSBC) and Specialized Loan Servicing LLC (SLS). For the reasons stated, the Court should **GRANT** the Motion in part and **DISMISS** Plaintiff Lester Lorenzo Rummans's claims against Defendants for breach of contract based on alleged violations of the Texas Property Code and the Servicemembers Civil Relief Act (SCRA), as well as certain of Rummans's claims under the Texas Debt Collections Act. The Court should **DENY** the Motion with respect to Rummans's claims against Defendants based on alleged violations of the VA Servicing Guidelines and his claims for declaratory judgment.

## Background

This case arises out of a disputed foreclosure sale of Rummans's home in Grand Prairie, Texas (the "Property"), which he purchased with his late wife on or around June 6, 2002.[1] Pl.'s MSJ App., Ex. 1 at 2 & Ex. A (ECF No. 23-1).

On August 1, 2003, Rummans and his wife refinanced their home using a VA loan (the "Loan"). *See id.* at Ex. B (ECF No. 23-1); Def.'s MSJ App., Ex. A (ECF No. 20-1). As part of that transaction, they executed a Multistate Fixed Rate Note (the "Note"), payable to Mortgage Resource Group, LLC of OK d/b/a City Mortgage Group LC (City Mortgage), *id.*, and a Deed of Trust to secure payment of the Note, Pl.'s MSJ App., Ex. C (ECF No. 23-1); Def.'s MSJ App., Ex. B (ECF No. 20-2). City Mortgage immediately assigned the Loan to Wells Fargo Home Mortgage, Inc., Def.'s MSJ App., Ex. C (ECF No. 20-3); and in 2011, Wells Fargo Bank N.A., successor by merger to Wells Fargo Home Mortgage, Inc., assigned the Loan to HSBC. *Id.* at Ex. D (ECF No. 20-4). Thereafter, SLS began servicing the Loan. *Id.* at Ex. K p. 2, ¶ 8 (ECF No. 20-11). HSBC is the current owner and holder of the Note. *See id.* at Ex. D.

Rummans was a Reserve Soldier in the U.S. Army. Pl's MSJ App., Ex. 1 at 3 & Ex. D (ECF No. 23-1); Def.'s MSJ App., Ex. E (ECF No. 20-5). His unit was reactivated in December 2003, and he served during the wars in Iraq and Afghanistan. Pl.'s MSJ App., Ex. D. He retired effective December 5, 2020, after

---

[1] Rummans's wife, Tuvonuia Rummans, passed away in 2013. Pl.'s MSJ App., Ex. 1 at 2.

completing 20 or more years of service and obtaining the rank of Master Sergeant. *Id.*; Def.'s MSJ App., Ex. E.

At some point during the term of the Loan, Rummans failed to make the required payments on the Note as they came due.[2] Def.'s MSJ App., Ex. K at 2, ¶ 9 & Ex. G (ECF No. 20-7). Beginning August 25, 2021, SLS sent Rummans several "Payoff Statements" concerning the Loan. *Id.* at Ex. G. On May 3, 2022, Defendants sent Rummans a Notice of Default and Notice of Intent to Accelerate, *id.* at Ex. F (ECF No. 20-6), and on June 9, 2022, Defendants posted the Property for foreclosure, Pl.'s MSJ App., Ex. E (ECF No. 23-1); Def.'s MSJ App., Ex. H (ECF No. 20-8). On July 5, 2022, Defendants conducted a foreclosure sale and sold Rummans's home to Northsky LLC. Pl.'s MSJ App., Ex. E; Def.'s MSJ App., Ex. J (ECF No. 20-10). Shortly thereafter, Northsky commenced a proceeding to evict Rummans from the Property. Not. Removal, Ex. B-1 (ECF No. 1-1).

To prevent his eviction, Rummans filed a complaint in Texas state court. Id. at Ex. B-1, pp. 8–24. Defendants, with Northsky's consent, timely removed the action to this Court on the basis of federal question jurisdiction. *Id.* at Ex. C. Rummans is still in possession of the Property. Pl.'s MSJ App., Ex. 1 at 2.

By his lawsuit, Rummans seeks to set aside the foreclosure sale and cancel the trustee's deed on grounds that Defendants failed to comply with federal law and the VA Servicing Guidelines which were allegedly incorporated into the Deed

---

[2] Some of the summary judgment evidence indicates that Rummans and his wife were in default when HSBC acquired the Loan. *See* Def.'s MSJ App., Ex. G.

of Trust. *See generally* Am. Compl. (ECF No. 8). Rummans also asserts claims for quiet title and trespass to try title against Northsky. *Id.* at 11–13. The Court previously denied Northsky's Motion to Dismiss. FCR (ECF No. 32); Order (ECF No. 33).

Defendants filed a Motion for Summary Judgment. Br. MSJ (ECF No. 20). Rummans responded to the Motion, Br. MSJ Resp. (ECF No. 22), and Defendants filed their Reply, Br. MSJ Reply (ECF No. 28). The Motion is ripe and ready for determination.

## Legal Standards

Summary judgment is proper when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).

A party seeking summary judgment bears the initial burden of showing the absence of a genuine issue for trial. *Duffy v. Leading Edge Prods., Inc.*, 44 F.3d 308, 312 (5th Cir. 1995) (citation omitted). The movant's burden can be satisfied by demonstrating that there is an absence of evidence to support the nonmoving party's case, which the nonmovant bears the burden of proving at trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Once the movant meets its initial burden, the nonmovant must show that summary judgment is not proper. *Duckett v. City of Cedar Park*, 950 F.2d 272, 276 (5th Cir. 1992) (citation omitted). The party opposing the summary judgment motion must identify specific evidence in the record and state the precise manner in which that evidence supports the party's

claim. *Esquivel v. McCarthy*, 2016 WL 6093327, at *2 (N.D. Tex. Oct. 18, 2016) (Lindsay, J.) (citing *Ragas v. Tenn. Gas Pipeline Co.*, 136 F.3d 455, 458 (5th Cir. 1988)).

The parties may satisfy their respective burdens "by tendering depositions, affidavits, and other competent evidence." *Topalian v. Ehrman*, 954 F.2d 1125, 1131 (5th Cir. 1992) (first citing *Int'l Shortstop, Inc. v. Rally's*, 939 F.2d 1257, 1263 (5th Cir. 1991); and then citing Fed. R. Civ. P. 56(e)). All evidence must be viewed in the light most favorable to the party opposing the summary judgment motion. *Rosado v. Deters*, 5 F.3d 119, 123 (5th Cir. 1993) (citing *Reid v. State Farm Mut. Auto. Ins. Co.*, 784 F.2d 577, 578 (5th Cir. 1986)).

## Preliminary Matters

Rummans and Defendants raise several objections to various declarations submitted as part of the summary judgment record. The Court addresses each objection in turn.

### A. The Wallace Declaration

Rummans first objects to Defendants' submission of the Declaration of Cynthia Wallace (the "Wallace Declaration"), arguing that it is conclusory, constitutes hearsay, and is not based on Wallace's personal knowledge. Br. MSJ Resp. 7–9. Defendants contend that "personal knowledge may [] be inferred from the affiant's position with [SLS]," and thus that the Wallace Declaration is competent summary judgment evidence. Br. MSJ Reply 8.

Pursuant to Federal Rule of Civil Procedure 56(c)(4), a "declaration used to support or oppose a motion must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the . . . declarant is competent to testify on the matters stated." *Mason v. AT&T Servs. Inc.*, 2019 WL 4721015, at *5 (N.D. Tex. Aug. 27, 2019) (Rutherford, J.) (quoting Fed. R. Civ. P. 56(c)(4)) (internal quotations omitted). Personal knowledge may be inferred from the declarant's position with the company. *DIRECTV, Inc. v. Budden*, 420 F.3d 521, 530 (5th Cir. 2005). "A custodian of records is competent to testify regarding business records as a corporate representative." *See Perdomo v. Fed. Nat'l Mortg. Ass'n*, 2013 WL 1123629, at *2 (N.D. Tex. Mar. 18, 2013) (Lynn, J.) (first citing Fed. R. Evid. 803(6); and then citing *Love v. Nat'l Med. Enters.*, 230 F.3d 765, 776 (5th Cir. 2000)).

The Wallace Declaration meets the requirements of Rule 56(c)(4). Wallace declares—under penalty of perjury—that she is the "Second Assistant Vice President of [SLS]," she "reviewed SLS's electronic loan file records pertaining to [the Loan]," she "ha[s] personal knowledge of the facts" based on her review of the Loan file, and "SLS keeps the documents attached to th[e] Motion for Summary Judgment . . . in the regular course of business." Def.'s MSJ App., Ex. K at 1–2. As Assistant VP of SLS with personal knowledge of SLS's business practices, Wallace had the authority to make the declaration after reviewing the business records, and it can be inferred she has knowledge of the facts relevant to this case. *See Sgroe v. Wells Fargo Bank, N.A.*, 941 F. Supp. 2d 731, 743 (E.D. Tex. 2013) ("[A]s a result

of [the declarant's] review of the records in this case, it can be reasonably inferred that he has personal knowledge of the facts applicable to Plaintiff's loan in this case."). Therefore, the Court overrules Rummans's objection to the Wallace Declaration attached as Exhibit K to Defendants' Motion for Summary Judgment.

B. <u>Notices</u>

Rummans further objects to submission of the Notice of Default and Intent to Accelerate, the Notice of Acceleration, and the Notice of Foreclosure Sale "because the documents are not properly authenticated." Br. MSJ Resp. 9–10; *see* Def.'s MSJ App., Exs. F & I (ECF No. 20-9). Defendants assert that "the Declaration IS made upon personal knowledge due to [Wallace's] position within the company" and therefore, as business records, the notices are competent summary judgment evidence. Br. MSJ Reply 10.

Federal Rule of Evidence 803(6) provides that certain business records are excepted from the hearsay rule. Fed. R. Evid. 803(6). "With respect to Rule 803(6), '[t]he exception requires that either the custodian or the business records or "other qualified witness" lay a foundation before the records are admitted.' However, '[t]here is no requirement that the witness who lays the foundation be the author of the record or be able to personally attest to its accuracy.'" *U.S. Commodity Futures Trading Comm'n v. Dizona*, 594 F.3d 408, 415 (5th Cir. 2010) (alterations in original) (quoting *United States v. Brown*, 553 F.3d 768, 792 (5th Cir. 2008)).

Wallace reviewed SLS's internal records, and she has personal knowledge that "[i]t is in the regular course of SLS's business operations for an employee or

representative, with the knowledge of the act, event, condition, opinion or diagnosis, recorded to make the record or to transmit thereof to be included in such record." Def.'s MSJ App., Ex. K at 2. Wallace testifies that the summary judgment evidence constitutes "true and correct copies" of the actual notices. *Id.* Therefore, Wallace's Declaration sufficiently lays the foundation as to the authenticity of the documents and establishes that they are business records. *See Crear v. Select Portfolio Servicing Inc.*, 760 F. App'x 291, 295 & n.2 (5th Cir. 2019) (finding business records sufficiently "trustworthy" for consideration on summary judgment where corporate officer submitted declaration authenticating foreclosure notices based on her review of loan records). Accordingly, the Court overrules Rummans's objections to the notices, attached as Exhibits F and I to Defendants' Motion for Summary Judgment.

C. <u>The Rummans Affidavit</u>

Defendants object to Rummans's own affidavit (the "Rummans Affidavit"), stating that the affidavit "does not comply with the Federal Rules of Civil Procedure and is not competent summary judgment evidence" because it is "inadmissible hearsay and self-serving." Br. MSJ Reply 5; *see also* Pl.'s MSJ App., Ex. 1 at 2–4. Defendants further argue that the Rummans Affidavit is a "sham affidavit." Br. MSJ Reply 8. Defendant also contend that Rummans is not qualified to authenticate the documents submitted with his affidavit. *Id.*

In the Fifth Circuit, courts recognize that "[a] party's testimony is often 'self-serving,'" and decline to exclude it as incompetent for that reason alone. *C.R.*

*Pittman Const. Co. v. Nat'l Fire Ins. Co. of Hartford*, 453 F. App'x 439, 443 (5th Cir. 2011); *see also Mathis v. Exxon Corp.*, 302 F.3d 448, 459 n. 16 (5th Cir. 2002) ("[M]erely claiming that the evidence is self-serving does not mean we cannot consider it or that it is insufficient. Much evidence is self-serving and, to an extent, conclusional."). An affidavit based on personal knowledge and containing factual assertions suffices to create a fact issue on summary judgment, even if the affidavit is arguably self-serving. *C.R. Pittman Const. Co.*, 453 F. App'x at 443 (holding that the district court erred in disregarding affidavits on a motion for summary judgment, because, "[a]lthough arguably 'self-serving,' the affidavits are not wholly conclusory, are based on personal knowledge, and create a fact issue").

In his affidavit, Rummans testifies—under penalty of perjury—that he purchased the Property in 2002 and later refinanced it, that he signed the Note and Deed of Trust on August 1, 2003, that his U.S. Army Reserve unit was reactivated in December 2003 and he served in the Iraq/Afghanistan war, that his wife died in 2013, and that he retired from the Army in December 2020. Pl.'s MSJ App., Ex. 1 at 2–3. This testimony is based on Rummans's personal knowledge and contains specific factual assertions; it is not "wholly" conclusory. Indeed, much of the information in Rummans's affidavit is corroborated by evidence submitted by Defendants.

Nor is the Rummans Affidavit a "sham affidavit." Generally, on summary judgment, "a district court must consider all the evidence before it and cannot disregard a party's affidavit merely because it conflicts to some degree with an

earlier deposition." *Seigler v. Wal-Mart Stores Tex., L.L.C.*, 30 F.4th 472, 477 (5th Cir. 2022) (quoting *Kennett-Murray Corp. v. Bone*, 622 F.2d 887, 893 (5th Cir. 1980)). "However, the 'sham-affidavit doctrine' is an exception this general rule by which 'this court does not allow a party to defeat a motion for summary judgment using an affidavit that impeaches, without explanation, sworn testimony." *Id.* (quoting *S.W.S. Erectors, Inc. v. Infax, Inc.*, 72 F.3d 489, 495 (5th Cir. 1996)). To meet this exception, an affidavit must be "clearly contradictory" to earlier deposition testimony and lack any substantive explanation for the affiant's reversal in course. *See Rowman v. SCI Tex. Funeral Servs., LLC*, 2019 WL 13252483, at *3 (N.D. Tex. June 7, 2019) (Lynn, J.). Defendants do not identify any of Rummans's previous, specific testimony that is contradicted by the Rummans Affidavit. Indeed, there does not appear to be any previous deposition testimony by Rummans in the record.

To the extent Defendants object that Rummans is not qualified to authenticate copies of the documents attached to his affidavit, the Court overrules this objection. Defendants do not explain why these documents—which appear to be identical to the same documents Defendants submitted in support of their motion—should be excluded.

In sum, the Court overrules Defendants' objections to the Rummans Affidavit and will consider any non-conclusory allegations included therein.

## Analysis

A. <u>Defendants are entitled to summary judgment on Rummans's breach of contract claims based on violations of the Texas Property Code and the SCRA, but not on his claims based on the VA Servicing Guidelines.</u>

Defendants first move for summary judgment on Rummans's claims that Defendants (i) failed to provide required notices of default and acceleration, the right of reinstatement, and the notice of trustee's sale in violation of section 51.002 of the Texas Property Code, (ii) failed to obtain a court order authorizing the foreclosure on the property in violation of the SCRA, 50 U.S.C. § 3952(a)(B), and (iii) failed to establish a realistic and mutually satisfactory arrangement for curing any default in violation of the VA Servicing Guidelines, 38 C.F.R. § 36.4350(h). *See* Am. Compl. 4–5. Defendants argue that they either complied with each of these provisions or did not need to comply, and that they should be granted summary judgment on all of Rummans's claims.

Texas courts have identified four essential elements of a breach of contract claim: "(1) the existence of a valid contract; (2) performance or tendered performance by the plaintiff; (3) breach of the contract by the defendant; and (4) damages sustained by the plaintiff as a result of the breach." *Valero Mktg. & Supply Co. v. Kalama Int'l*, 51 S.W.3d 345, 351 (Tex. App.—Houston [1st Dist.] 2001, no pet.) (emphasis omitted); *see also Landrum v. Devenport*, 616 S.W.2d 359, 361 (Tex. App.—Texarkana 1981, no writ). Beyond these requirements, "a claim for a breach of a note and deed of trust must identify the specific provision

in the contract that was breached." *Williams v. Wells Fargo Bank, N.A.*, 560 F. App'x 233, 238 (5th Cir. 2014).

   i. *Rummans's default does not preclude pursuit of his breach of contract claims.*

Defendants first argue that Rummans's default bars all of his breach of contract claims.

Under Texas law, performance or tendered performance by the plaintiff is a requirement for a breach of contract claim, but "[i]f performance of the terms of a deed of trust governing the parties' rights and obligations in the event of default can always be excused by pointing to the debtor's default under the terms of the note, the notice terms have no meaning." *Williams*, 884 F.3d at 245. "A lender's obligations when a borrower defaults—including providing notice—are independent of the borrower's obligation to make monthly payments." *Shastry v. U.S. Bank Nat'l Ass'n as Successor Tr. to Wachovia Bank Nat'l Ass'n*, 2021 WL 849015, at *8 (N.D. Tex. Feb. 11, 2011) (quoting *Williams*, 884 F.3d at 245), *adopted by* 2021 WL 842132 (N.D. Tex. Mar. 5, 2021).

Here, the evidence indicates that Rummans has not remitted any payments on the Loan since SLS began servicing the loan. Def.'s MSJ App., Ex. K, at 1–3. But the notice requirements on which Rummans bases his breach of contract claim are "independent" of his obligation to make monthly payments. *See Williams*, 884 F.3d at 245. Defendants offer no evidence to demonstrate the required notices are dependent on Rummans's obligation to make monthly payments. *See Shastry*,

2021 WL 849015, at *8. And as noted in *Williams*, if the debtor's—here, Rummans's—default always precluded any breach of contract claim, the intent of the parties' Deed of Trust could not be given effect. *See Williams*, 884 F.3d at 245. Accordingly, Rummans's default on the Loan does not entitle Defendants to summary judgment on Rummans's breach of contract claims.

    ii.   *There is no genuine issue of material fact that Defendants did not violate section 51.002 of the Texas Property Code.*

Defendants also move for summary judgment on Rummans's claims that Defendants did not provide the proper notices in violation of section 51.002 of the Texas Property Code. Rummans alleges that Defendants "breached the Deed of Trust by failing to provide the required notice of default and notice of acceleration and right of reinstatement, and notice of trustee's sale." Am. Compl. 4. He asserts that "Section 51.002 of the Texas Property Code provides the relevant requirements for a foreclosing entity" and that "[HSBC and SLS] failed to comply with the[] notice provisions." *Id.* at 4. Defendants rebut these assertions, arguing that they are entitled to summary judgment because they fully complied with section 51.002 of the Texas Property Code. Br. MSJ. 7–9.

The relevant portion of section 51.002 of the Texas Property Code provides that:

> (d) Notwithstanding any agreement to the contrary, the mortgage servicer of the debt shall serve a debtor in default under a deed of trust or other contract lien on real property used as the debtor's residence with written notice by certified mail stating that the debtor is in default under the deed of trust or other contract lien and giving the debtor at least 20 days to cure the default before

notice of sale can be given under Subsection (b). The entire calendar day on which the notice required by this subsection is given, regardless of the time of day at which the notice is given, is included in computing the 20-day notice period required by this subsection, and the entire calendar day on which notice of sale is given under Subsection (b) is excluded in computing the 20-day notice period.

(e) Service of a notice under this section by certified mail is complete when the notice is deposited in the United States mail, postage prepaid and addressed to the debtor at the debtor's last known address. The affidavit of a person knowledgeable of the facts to the effect that service was completed is prima facie evidence of service.

Tex. Prop. Code 51.002(d)-(e).

Here, Defendants show that they sent Rummans and his late wife (and her estate) Notice of Default and Notice of Intent to Accelerate by certified mail, on May 3, 2022. Def.'s MSJ App., Ex. F. Thereafter, on June 9, 2022, Defendants accelerated the debt and posted the Property for foreclosure. *Id.* at Ex. H. Further, Defendants sent Rummans notice of the foreclosure sale by certified mail on June 10, 2022. *Id.* at Ex. I, pp. 1–23. Defendants also submitted the Wallace Declaration to support their assertion that the notices were timely mailed. *Id.* at Ex. K, 1–2.

In defense of his claim, Rummans attempts to rebut this evidence by stating that he did not *receive* any of the notices and argues that "[HSBC and SLS] have no evidence of any USPS receipts for any of the required notices." Br. MSJ Resp. 14. However, Defendants attached their USPS certified mail certificates, and, in any event, actual receipt by Rummans of the documents it not necessary under section 51.002 of the Texas Property Code. Tex. Prop. Code § 51.002(e) (noting that "[s]ervice of a notice . . . by certified mail is complete when the notice is

14

deposited in the United States mail"). Service is perfected when the certified mail is deposited with the post office. *See id.* As Defendants have submitted uncontroverted, competent summary judgment evidence of the mailings and compliance with section 51.002, they are entitled to summary judgment on Rummans's breach of contract claim based on alleged violations of section 51.002 of the Texas Property Code.

      *iii.*    *There is no genuine issue of material fact that Defendants did not violate the SCRA.*

Defendants also move for summary judgment on Rummans's claims that they violated the SCRA. Rummans claims that Defendants "had to take certain actions prior to foreclosing" in accordance with foreclosure statutory protections granted to military servicemembers. Am. Compl. 4. Because, in his view, the Defendants did not take certain required actions, Rummans asserts that the foreclosure sale should be set aside. *Id.*

Formerly known as the Soldiers' and Sailors' Civil Relief Act (SSCRA), the SCRA amended the SSCRA "to enable [servicemembers] to devote their entire energy to the defense needs of the Nation" and "to provide for the temporary suspension of judicial and administrative proceedings and transactions that may adversely affect the civil rights of servicemembers during their military service." 50 U.S.C. § 3902. "It accomplishes this purpose by imposing limitations on judicial proceedings that could take place while a member of the armed forces is on active

duty, including insurance, taxation, loans, contract enforcement, and other civil actions." *Brewster v. Sun Tr. Mortg., Inc.*, 742 F.3d 876, 878 (9th Cir. 2014).

In this case, Rummans alleges that Defendants violated 50 U.S.C. §3952(a)(1). Am. Compl. 4. Section 3952 of the SCRA provides for protection under installment contracts for purchase or lease. Specifically:

(a) Protection upon breach of contract

    (1)  Protection after entering miliary service

    After a servicemember enters military service, a contract by the servicemember for—

    (A) the purchase of real or personal property (including a motor vehicle); or

    (B) the lease or bailment of such property,

    may not be rescinded or terminated for a breach of terms of the contract occurring before or during that person's military service, nor may the property be repossessed for such breach without a court order.

50 U.S.C. § 3952(a)(1). By its plain language, however, section 3952(a) does not apply to the facts at issue here. Rummans's lawsuit does not involve an installment purchase contract for, or lease of, the Property. Instead, the "contract" at issue is the Loan, evidenced by the Note and secure by the Deed of Trust.

Section 3953 of the SCRA applies to mortgage loans, like the one at issue here. That section provides:

(a) Mortgage as security

This section applies only to an obligation on real or personal property owned by a servicemember that—

(1) originated before the period of the servicemember's military service and for which the servicemember is still obligated.

(2) is secured by a mortgage, trust deed, or other security in the nature of a mortgage.

(b) Stay of proceedings and adjustment of obligation

In an action filed during, or within one year after, a servicemember's period of military service to enforce an obligation described in subsection (a), the court may after a hearing and on its own motion and shall upon application by a servicemember when the servicemember's ability to comply with the obligation is materially affected by military service—

(1) stay the proceedings for a period of time as justice and equity require, or

(2) adjust the obligation to preserve the interests of all parties.

(c) Sale or foreclosure

A sale, foreclosure, or seizure of property for a breach of an obligation described in subsection (a) shall not be valid if made during, or within one year after, the period for the servicemember's military service except—

(1) upon a court order granted before such sale, foreclosure, or seizure with a return made and approved by the court; or

(2) if made pursuant to an agreement as provided in section 3918 of this title.

28 U.S.C. § 3953(a)–(c). By its plain language, section 3953 does not protect Rummans from foreclosure on the facts at issue here. The SCRA's protections do not extend in perpetuity. The statute only prohibits a non-judicial foreclosure sale of a servicemember's property "during, or within one year after, the period of the servicemember's military service." 50 U.S.C. § 3953(c). Rummans served in the

Army until December 5, 2020, Def.'s MSJ App., Ex. E at 5, and Defendants waited until July 2022 to foreclose on the Property. *Id.* at Ex. J. Defendants' foreclosure on the Property more than 18 months after Rummans retired from the Army did not violate the SCRA.

Defendants are entitled to summary judgment on Rummans's claims based on the SCRA.

iv. *Defendants have not met their burden to show the absence of a genuine issue of material fact on whether they complied with 38 C.F.R. § 36.4350(h).*

Defendants also move for summary judgment on Rummans's claims that Defendants violated the VA Servicing Guidelines. Br. MSJ 10–13. In their summary judgment brief, Defendants argued that (1) the VA Servicing Guidelines are not incorporated into the Deed of Trust, and (2) they complied with the VA Servicing Guidelines by sending four separate payoff statements before they initiated foreclosure proceedings. *Id.* at 11. Rummans responded that the payoff statements do not evince a "realistic and mutually satisfactory" arrangement because Defendants "insisted on payment of the loan in full." Br. MSJ Resp. 17.

The VA statutes, 38 U.S.C. §§ 101 *et seq.*, and the regulations issued thereunder (the "VA Servicing Guidelines") require that certain procedures must be followed for any VA loan, including:

> Conducting interviews with delinquent borrowers. When personal contact with the borrower(s) is established, the holder shall solicit sufficient information to properly evaluate the prospects for curing the default and whether the granting of forbearance or other relief

assistance would be appropriate. At a minimum, the holder must make a reasonable effort to establish the following:

(1) The reason for the default and whether the reason is a temporary or permanent condition;

(2) The present income and employment of the borrower(s);

(3) The current monthly expenses of the borrower(s) including household and debt obligations;

(4) The current mailing address and telephone number of the borrower(s); and

(5) A realistic and mutually satisfactory arrangement for curing the default.

38 C.F.R. § 36.4350(h). While the VA Servicing Guidelines may not provide for a private cause of action, *see Roberts v. Cameron-Brown Co.*, 556 F.2d 356, 360–62 (5th Cir. 1977), "[c]ourts have held that if the parties explicitly incorporated [certain regulations] into their agreement, the documents and regulations constitute an integrated contract, the violation of which may form the basis of a breach of contract claim," *Franklin v. BAC Home Loans Servicing, L.P.*, 2011 WL 248445, at *2 (N.D. Tex. Jan. 26, 2011) (Lynn, J.) (first citing *Hernandez v. Home Sav. Ass'n of Dall. Cnty.*, 606 F.2d 596, 601 (5th Cir. 1979); then citing *Buis v. Wells Fargo Bank, N.A.*, 401 F. Supp. 2d 612, 616 (N.D. Tex. 2005); and then citing *Baker v. Countrywide Home Loans, Inc.*, 2009 WL 1810336, at *5 (N.D. Tex. June 24, 2009)) (discussing HUD regulations). Further, a "note and deed of trust must be read together in evaluating the terms and construed together as a single instrument." *Warren v. Bank of Am., N.A.*, 2012 WL 3020075, at *4 (N.D. Tex.

19

June 19, 2012) (Ramirez, J.) (citing *Dempsey v. U.S. Bank Nat'l*, 2012 WL 2036343, at *5 (E.D. Tex. June 6, 2012)), *adopted by* 2013 WL 1131252 (N.D. Tex. Mar. 19, 2013) (Lynn. J.).

Defendants first argue that "the summary judgment evidence conclusively establishes that the VA Servicing Guidelines are **<u>not</u>** incorporated into the Note and Deed of Trust." Br. MSJ 12. However, as Rummans points out, the Note expressly provides that:

> This Note is a uniform instrument with limited variations in some jurisdictions. In addition to the protections given to the Note Holder under this Note, a Mortgage, Deed of Trust, or Security Deed (the "Security Instrument"), dated the same date as this Note, protects the Note Holder from possible losses which might result if I do not keep the promises which I make in this Note. That Security Instrument describes how and under what conditions I may be required to make immediate payment in full of all amounts I owe under this Note. Some of those conditions are described as follows:
>
> *Regulations (38 C.F.R. Part 36) issues under the Department of Veteran's Affairs ("VA") Guaranteed Loan Authority* (38 U.S.C. Chapter 37) and in effect on the date of loan closing shall govern the rights, duties and liabilities of the parties to this loan and any provisions of this Note which are inconsistent with such regulations are hereby amended and supplemented to conform thereto.

Def.'s MSJ App., Ex. A at 1, 3 (emphasis added); Br. MSJ Resp. 15–18. Defendants do not address this provision in their Reply, and by their omission, Defendants tacitly concede that the VA Servicing Regulations are incorporated into the Note and Deed of Trust.

The next question, then, is whether Defendants have met their burden to show the absence of a genuine issue of material fact on whether they complied with

38 C.F.R. § 36.4350(h). Defendants state that they complied with the VA Servicing Guidelines because they "sent [Rummans] four separate notices in accordance with 38 C.F.R. [§] 36.4350(h)(5)." Br. MSJ 11. But the notices are merely payoff statements that require payment in full of the outstanding balance. Def.'s MSJ App., Ex. G. There is no evidence in the record the Defendants solicited sufficient information from Rummans to evaluate the prospects for curing the default and whether the granting of forbearance or other relief assistance would be appropriate. There is no evidence that Defendants made any effort—much less a reasonable effort—to establish that full payment was realistic for Rummans or satisfactory to him. At best, Defendants' citation to the four notices creates a fact question about whether the notices comply with the directives in 38 C.F.R. § 36.4350(h). Thus, Defendants' motion for summary judgment should be denied on Rummans's claim for breach of contract based on violations of the VA Servicing Guidelines.

   B. Defendants are entitled to summary judgment on certain of Rummans's Texas Debt Collections Act (TDCA) claims.

   Defendants also move for summary judgment on Rummans's claims under the TDCA.

   The TDCA prohibits debt collectors from using threats, coercion, or other wrongful practices in the collection of consumer debts. *See Gomez v. Wells Fargo Bank, N.A.*, 2010 WL 2900351, at *3 (N.D. Tex. July 21, 2010); *Brown v. Oaklawn Bank*, 718 S.W.2d 678, 680 (Tex. 1986). "To state a claim under the TDCA, a

plaintiff must allege that: (1) the debt at issue is a consumer debt; (2) the defendant is a 'debt collector' within the meaning of the TDCA; (3) the defendant committed a wrongful act in violation of the TDCA; (4) the wrongful act was committed against the plaintiff; and (5) the plaintiff was injured as result of the defendant's wrongful act." *Flores v. PennyMac Loan Svcs., LLC*, 2019 WL 4720977, at *3 (N.D. Tex. Sept. 4, 2019) (Rutherford, J.), *adopted by* 2019 WL 4691621 (N.D. Tex. Sept. 25, 2019). Rummans states that Defendants (i) noticed a foreclosure sale despite Defendants' noncompliance with SCRA and the VA Servicing Guidelines in violation of section 392.304(a)(8) of the Texas Finance Code, (ii) noticed a foreclosure when they were violating the SCRA and VA Servicing Guidelines in violation of section 392.304(a)(19), and (iii) conducted a foreclosure sale absent a valid contractual right to foreclose in violation of section 392.301(a)(8) of the Texas Finance Code.

Defendants are entitled to summary judgment on Rummans's section 392.304(a)(8) claim. This provision "prohibits a debt collector from using a fraudulent, deceptive, or misleading misrepresentation that employs certain enumerated practices in attempting to collect a debt or obtain consumer information." *Flores*, 2019 WL 4720977, at *4 (citing Tex. Fin. Code § 392.304(a)(8)). To qualify as a violation under the TDCA, "the debt collector's misrepresentation 'must have made an *affirmative statement* that was false or misleading.'" *Id.* (quoting *Thompson v. Bank of Am. Nat'l Ass'n*, 783 F.3d 1022, 1026 (5th Cir. 2015)). Rummans points to no misleading or fraudulent statement

by HSBC or SLS. Rummans reargues his position that Defendants violated federal or state law and the VA Servicing Guidelines, but he does not provide any specific statements that demonstrate a misleading or fraudulent statement about the status of Rummans's debt. Br. MSJ Resp. 18–20. Without Rummans pointing to any specific, affirmative statement by HSBC or SLS that can be construed as evidence of a misleading or fraudulent statement about the status of Rummans's debts, Defendants are entitled to summary judgment on Rummans's section 392.304(a)(8) claim.

Defendants are also entitled to summary judgment on Rummans's section 392.304(a)(19) claim. This "catch-all" provision prohibits a debt collector from "using any other false representation or deceptive means to collect a debt or obtain information concerning a consumer." *Beam v. Caliber Home Loans, Inc.*, 2021 WL 4445351, at *10 (N.D. Tex. Sept. 7, 2021) (Rutherford, J.), *adopted by* 2020 WL 5848973 (N.D. Tex. Oct. 1, 2020) (Lynn, J.), *appeal dismissed sub nom. Henderson v. Arbelaez Invs., L.L.C.*, 2021 WL 606777 (5th Cir. 2021). As with a section 392.304(a)(8) claim, the misrepresentation must be an affirmative statement that was "false or misleading." *Id.* Rummans asserts that Defendants violated the Deed of Trust terms and applicable law. *See* Am. Compl. 8; Br. MSJ Resp. 20. But there is no evidence that HSBC or SLS made any affirmative, misleading statements to Rummans about his debts, and Rummans does not point to any evidence that HSBC or SLS's actions could be construed as a

misrepresentation. Therefore, Defendants are entitled to summary judgment on Rummans's claim under section 392.304(a)(19).

But Defendants are not entitled to summary judgment on Rummans's section 392.301(a)(8) claim. This provision prohibits a debt collector from "threatening to take an action prohibited by law." Tex. Fin. Code § 392.301(a)(8). When a lender threatens foreclosure, it does not violate section 392.301(a)(8) if it had the right to foreclose and the loan was in default. *See Rucker v. Bank of Am., N.A.*, 806 F.3d 828, 831 (5th Cir. 2015) (noting that a mortgagee would not violate section 392.301(a)(8) "if it had retained its contractual right to foreclose and the mortgage was in fact in default."). Here, the undisputed evidence demonstrates that Rummans had been in default, Def.'s MSJ App., Ex. F at 2; Ex. K at 2, but there is at least a fact question as to whether Defendants complied with the VA Servicing Guidelines and thus had the authority under the Deed of Trust to conduct the foreclosure sale, *id.* at Ex. B, p. 10. Accordingly, Defendants are not entitled to summary judgment on Rummans's claim under section 392.301(a)(8).

C. <u>Defendants are not entitled to summary judgment on Rummans's request to set aside the foreclosure sale and cancel the trustee deed or for declaratory judgment.</u>

Defendants move for summary judgment on Rummans's request to set aside the foreclosure sale. Br. MSJ 17–19. Rummans states that "when a foreclosure has occurred in violation of the deed of trust," a cause of action exists to "set aside a foreclosure sale and resulting trustee's deed." Br. MSJ Resp. 21. In Rummans's view, the sale is void because it did not strictly comply with the Deed of Trust. *Id.*

at 23. Rummans requests this Court to (1) declare the Texas Property Code, SCRA, and the VA Servicing Guidelines are incorporated into the Deed of Trust, and (2) declare that Defendants failed to comply with their duties under the Texas Property Code, SCRA, and VA Servicing Guidelines. *See* Am. Compl. 13.

Declaratory judgment is a form of relief based on the underlying claims. *See Collin Cnty. v. Homeowners Ass'n for Values Essential to Neighborhoods*, 915 F.2d 167, 170–71 (5th Cir. 1990); *Flores*, 2019 WL 4720977, at *7. "[C]ourts routinely consider requests for declaratory judgments declaring foreclosure sales void and allow them to proceed so long as there is a surviving, substantive cause of action—such as a claim for breach [of] contract—to support the request for declaratory relief." *Smyth v. Travis*, 2021 WL 972634, at *3 (E.D. Tex. Mar. 16, 2021) (citing *Fraley v. BAC Home Loans Servicing, LP*, 2012 WL 779130, at *9–10 (N.D. Tex. Jan. 10, 2012)), *adopted by* 2012 WL 779654 (N.D. Tex. Mar. 9, 2012).

Here, Rummans's substantive claims regarding Defendants' alleged breach of contract based on failure to properly adhere to the VA Servicing Guidelines survive. These substantive claims may allow for a remedy in the form of declaratory relief to declare the foreclosure sale invalid.

D. Defendants' motion for attorneys' fees and costs is premature.

Defendants also move for summary judgment on their claim for attorneys' fees and costs. However, in view of the denial of summary judgment, "[a] determination of attorneys' fees . . . is premature, as the court determines

attorney's fees postverdict pursuant to Federal Rule of Civil Procedure 54(d)(2)(B)." *See Holt v. Deutsche Bank Nat'l Tr. Co.*, 2015 WL 3755049, at *4 (N.D. Tex. June 12, 2015). Defendants' request for attorneys' fees should be denied at this time.

### Recommendation

For the reasons stated, the Court should **GRANT in part and DENY in part** Defendants' Motion for Summary Judgment. Specifically, the only claims that should remain are (1) Rummans's claims based on Defendants' alleged failure to comply with the VA Servicing Guidelines and (2) Rummans's request for declaratory relief against all Defendants.

**SO RECOMMENDED**.

January 23, 2024.

_____
REBECCA RUTHERFORD
UNITED STATES MAGISTRATE JUDGE

## INSTRUCTIONS FOR SERVICE AND
## NOTICE OF RIGHT TO APPEAL/OBJECT

A copy of this report and recommendation shall be served on all parties in the manner provided by law. Any party who objects to any part of this report and recommendation must file specific written objections within 14 days after being served with a copy. *See* 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72(b). In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's report and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific. Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error. *See Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996).